PUTNEY & CO. v. McDOW.

1. FINDING OF FACT as to payment of judgment affirmed.   MR. JUSTICE JONES *dissents*.
2. SURETY—JUDGMENT.—The payment of a judgment by one principal does not entitle him to the position of surety as to reimbursement.
3. FINDING OF FACT that wife was not creditor of husband's firm, affirmed.

Before WATTS, J., York, January, 1897.   Affirmed.

Action by Stephen. Putney & Co. *et al. v.* Thos. F. Mc-
Dow, as assignee, *et al.*, to set aside a deed of assignment.
The referee found that the claims of R. M. Allison and of
Mrs. Carrie J. Cartwright are valid claims against the as-
signed estates.  Upon exceptions to this report, the Circuit
Judge reversed it in a decree, of which the following is suf-
ficient to understand the issues here:

The final decree in this action was made and rendered by
his Honor, Judge W. C. Benet, on the 28th day of August,
A. D. 1895.  Having held that the deed of assignment exe-
cuted by A. Y. Cartwright & Co., A. Y. Cartwright, and W.
M. Allison was fraudulent and void both under the Statute
of Elizabeth and the assignment law of this State, Judge
Benet ordered, adjudged, and decreed, that the deed of as-
signment made by A. Y. Cartwright & Co., and A. Y. Cart-
wright and W. M. Allison to Thomas F. McDow, Esq., on
the 1st of February, 1894, is null and void, and that the
same be set aside and vacated.  He nevertheless regarded
the bill that had been filed for the exclusive benefit of five
judgment creditors of A. Y. Cartwright & Co., in the light
of a creditor's bill, and incorporated the following additional
orders in his decree, namely: "It is further ordered, that the
clerk of the court for the county of York do forthwith pub-
lish for thirty days in one of the public newspapers of said
county, a notice requiring all creditors of the assignors who
are willing to contribute their share to the expenses of this
action, to present and prove their claims before him within
thirty days from the last day of the said advertisement, or
be thereafter barred.  Such contributing creditors to sign
an agreement in writing to that effect.  It is further or-
dered, that any party shall have the right to contest the
claims presented to be proved and to except to the rulings
of the clerk of this court thereupon."

Rufus M. Allison and Carrie J. Cartwright, who were the
uncle and wife, respectively, of W. M. Allison and A. Y.
Cartwright, each presented his and her claim under the call
published by the clerk of the court, and each of the said

claims were vigorously contested by the receiver of the insolvent estates of A. Y. Cartwright & Co., A. Y. Cartwright and W. M. Allison, in behalf of all the *bona fide* copartnership creditors of A. Y. Cartwright & Co., embracing the five judgment creditors of said firm who had filed the bill that resulted in vacating the deed of assignment. * * * As to the claim of R. M. Allison, I find that it rose out of the following state of facts: On August 27th, 1890, and August, 3d, 1891, respectively, A. Y. Cartwright & Co., composed of A. Y. Cartwright and W. M. Allison, under their firm name of A. Y. Cartwright & Co., made their two certain notes payable to the order of James L. Moss, due and payable November 1st, 1890, and November 15th, 1891, respectively, with interest on each note at the rate of eight per centum, from the date of each note. R. M. Allison signed his name in blank on the back of each of the said notes at the date of execution, and in this form, each of the said notes were delivered to James L. Moss, who, upon receipt of each note, delivered the amount specified on the face of each of the said notes, the sum of $200—that is, $400 on the two notes. Thereafter, W. M. Allison, with a view to buying the interest of his partner, A. Y. Cartwright, in the firm of A. Y. Cartwright & Co., procured, so far as James L. Moss and his attorney, J. S. Brice, were concerned, an unconditional substitution of the joint and several note of W. M. Allison and R. M. Allison, in the sum of $400, to become due and payable to James L. Moss on or before the 31st day of December, 1894, for the two notes, each in the sum of $200, above described. The joint and several note of W. M. and R. M. Allison is not dated, but is executed under the hands and seals of W. M. Allison and R. M. Allison. The proof is that the joint and several note was substituted unconditionally about the 1st of January, 1894, and was held by J. S. Brice, Esq., as the attorney of James L. Moss, for several weeks, and certainly up to the date of the execution of the deed of assignment by A. Y. Cartwright & Co., A. Y. Cartwright and W. M. Allison to T. F. Mc-

Dow, on the 1st of February, 1894, or until just before the execution of said deed of assignment.   Between the date of the substitution of the joint and several note of W. M. Allison and R. M. Allison for the two notes in the sum of $200 each, dated August 27th, 1890, and August 3d, 1891, respectively, W. M. Allison tried repeatedly and in vain to prevail upon J. S. Brice, Esq., the attorney of James L. Moss, to allow a firm note of A. Y. Cartwright & Co. to be substituted for the joint and several note of W. M. and R. M. Allison; urging as his reason for asking the proposed substitution that if the worst came to the worst, he wanted his uncle, R. M. Allison, to get the benefit of the assignment, if the firm had to make one.   The attorney of James L. Moss refused to permit the substitution, but at last yielded solely to the entreaties of W. M. Allison, and the firm note was substituted for the joint and several note on or about the 1st day of February, 1894, and clearly in anticipation of the assignment, which was executed on the date last named.   The note that James L. Moss subsequently sued to judgment against A. Y. Cartwright & Co. and R. M. Allison, is the firm note that was substituted by the entreaties of W. M. Allison on or about February 1st, 1894, which is its correct date of execution, notwithstanding that the note appears on its face to have been dated January 1st, 1894.   On the 16th day of April, 1895, James L. Moss recovered judgment on the above described firm note in the sum of $400, which became due and payable on January 1st, 1895, against A. Y. Cartwright & Co. and R. M. Allison, and entered up judgment for recovery and costs.   Thereafter, on the 30th day of November, 1895, W. M. Allison paid the judgment, interest, and costs, amounting on said date to the sum of $472.05, with money obtained by him from his wife, Nannie E. Allison, $305.36, and from the Ganson Dry Goods Company, of which the said W. M. Allison was an employee, $169. * * * The checks themselves, which were introduced in evidence by the receiver, furnish the highest evidence of who borrowed the money

with which the judgment was paid, and on whose account
the payment was made.   On the 30th day of November,
1895, W. M. Allison drew a check on the Loan and Savings
Bank in favor of himself in the sum of $305.06, signing his
wife's name to the check, per himself, and on the same date
the Ganson Dry Goods Company drew its check in favor of
W. M. Allison on the Loan and Savings Bank in the sum
of $169.   Both of said checks were presented at the bank
and are stamped paid by the bank on the 30th day of No-
vember, 1895.   There cannot be a doubt that with the money
thus obtained, W. M. Allison paid the judgment, interest,
and costs; but as a continuation of the original plan of W.
M. Allison to give his uncle, R. M. Allison, an illegal pre-
ference, evidenced by the substitution of a firm note for the
individual note of himself and said uncle on or about the
date of the execution of the deed of assignment on Febru-
ary 1st, 1894, in paying the money to W. Brown Wylie,
clerk of the court of common pleas for York County, he
made it appear as if on the 30th day of November, 1895,
the very date upon which the checks in his favor were
cashed, he was making the payment for R. M. Allison.
Accordingly, the following receipt was prepared and signed
by the clerk: "Received, November 30th, 1895, of R. M.
Allison (per W. M. Allison), $472.05, in full of the within
judgment, interest, and cost.   Signed, W. Brown Wylie, C.
C. C. Pls."   About the time that the clerk had signed the
above receipt, W. M. Allison remarked that he wanted it
"fixed right," and the clerk told him that he would take it
to Mr. Spencer and have it fixed right.   What length of
time elapsed between the signing of the receipt and the addi-
tion thereto, is not clearly established by the testimony. * * *

    I, therefore, am constrained to find, that the following
addition to the receipt, namely: "so far as he is concerned,
he having paid same as surety on the debt," which was
written over the face of the signature of the clerk, without
any attempt whatsoever to disguise the fact that the receipt
had been added to, was not contemporaneous with, nor was

it part and parcel of the same transaction, which resulted in the signing of the original receipt. No charge of bad faith was urged against the clerk, or the counsel who suggested the addition, but, on the contrary, Mr. McCaw, counsel for the receiver, disclaimed such, and only urged that the addition was not contemporaneous or part and parcel of the same transaction that culminated in the writing and signing of the original receipt, and exhibited the receipt and its appearance in furtherance of his contention. Applying the law to the facts as found, I find that at the inception of the transactions between A. Y. Cartwright & Co., R. M. Allison, on the one side, and James L. Moss, on the other, the money not having been paid until R. M. Allison had signed the notes, dated August 27th, 1890, and August 3, 1891, each in the sum of $200, in blank, without express words to show the nature of his contract, and without notice to James L. Moss, in what capacity he indorsed each of said notes in blank, the said R. M. Allison, as to James L. Moss, undoubtedly became liable as an original promisor, and his undertaking must be regarded as original and not collateral. * * *

We will now take up the claim of Carrie J. Cartwright. This claim is represented by a note in the sum of $1,694.95, executed on the 22d day of January, 1894, and is signed in the firm name of A. Y. Cartwright & Co., and to the signature is affixed a seal. The note is drawn so as to mature one day after date, and was executed exactly six days previous to the execution of the deed of assignment by A. Y. Cartwright & Co. and A. Y. Cartwright and W. M. Allison to Thomas F. McDow, on the 1st day of February, 1894. That the note was executed in anticipation of the deed of assignment that so soon followed, will not admit of a doubt. To sustain the note, it was contended that the consideration of same was made up of the following items: $132 and $1,182.99, that A. Y. Cartwright paid into the firm on the 14th and 23d days of January, 1893, Cartwright claiming that he apprised the firm that it was his wife's money, with

interest on said sums until the date of note, January 22d, 1894, and a balance due upon a certain note, in the sum of $500, executed by W. D. and R. H. Glenn to W. Brown Wylie on the 28th day of January, 1891, upon which appeared the following credits and indorsements, viz: "Received, October 10th, 1891, on the within note, $200. W. Brown Wylie." "Received, January 3d, 1893, $44.69, in full of all the interest to date on this note. W. Brown Wylie." "For value received, this 4th of January, 1893, the within note is hereby transferred to A. Y. Cartwright, without recourse. W. Brown Wylie." "For value received, I this day assign, transfer and set over to Carrie J. Cartwright the within note, without recourse, this 20th January, 1894. A. Y. Cartwright (Seal). Attest: J. S. Brice." The last named assignment has pen strokes passed over the face of same, but is very legible. *·* * On January 14th, 1893, A. Y. Cartwright was indebted to the firm of A. Y. Cartwright & Co. in the sum of $1,365.65. On that day he was given credit for $132, and on the 23d of January, 1893, he was again given credit for $1,182.99. After the 23d of January, 1893, other items of debit were added to the account. Including all the debit items up to the entry about a certain note for $1,694.95, which the firm gave to Carrie J. Cartwright, the wife of A. Y. Cartwright, on the 22d of January, 1894, they foot up $1,667.28. Then comes the entry about the note to Carrie J. Cartwright. A. Y. Cartwright is first debited with "Amount note to Mrs. Carrie J. Cartwright, $1,694.95," and then credited with "Difference between amount to his credit, $1,314.99, and amount of note, $1,694.95, $379.96." The account stated in figures and in account form appears thus:

| A. Y. Cartwright. | Cr. | Dr. |
|---|---|---|
| January 14th, 1893....................... | | $1,365 63 |
| January 14th, 1893.......................$ 132 00 | | |
| January 23d, 1893....................... 1,182 99 | | |
| | | $1,314 99 |

To all debit items up to Jan. 22d, 1894..          1,667  28
"To amt. note to Carrie J. Cartwright,"            1,694  65

                                                   $3,362  23
By "Diff. bet. amt. to his credit, $1,314.-
   99, and amt. of note, $1,694.95".....    379  96

                                            $1,694  95

Balance due firm by A. Y. Cartwright..             $1,667  28

At a glance it becomes apparent that the credit, "Diff. between amount to his credit, $1,314.99, and amount of note, $1,694.95," is forced, and the attempt made for Mrs. Cartwright to show that this credit can be explained by the balance due on the Glenn note, with interest from January 4th, 1893 (when Wylie assigned same to A. Y. Cartwright, in part payment of the purchase of the latter's house and lot), until January 22d, 1894, when the firm note to Carrie J. Cartwright was executed, is overthrown by a calculation of the amount then due on the Glenn note, which I find to be $323.48, which is $56.48 less than the "Diff. between amount to his credit, $1,314.99, and the amount of note, $1,694.95." If to the amount due on the Glenn note on the 22d of January, 1894, is added the interest due on said date on the other alleged items making up the consideration of the note, the result will be $323.48, plus $92.94, producing $415.52, or $35.56 in excess of the "Difference" above mentioned. * * * That A. Y. Cartwright was indebted to his wife for sums of money which the latter had received from her father and her father's estate, is, no doubt, true, but the testimony is conclusive that in the sale of his house and lot to W. Brown Wylie, for which he realized $1,300 in cash, and the Glenn note, which Wylie assigned to him without recourse, the property was sold and the title was made by A. Y. Cartwright, free of all claims and incumbrances. Cartwright certainly did not pay any alleged indebtedness of himself to his wife with any part of the money that he received from Wylie. On the contrary, he deposited the same in

the Loan and Savings Bank, as his own money, and his pass book with the said bank shows that the money was checked out by A. Y. Cartwright himself. The books kept by A. Y. Cartwright & Co. are admitted to have been correct, and the record of how the money which he checked out of the bank was directed to be applied, is far more likely to be correctly preserved by the credits placed on his individual account with the firm, at the time, than the testimony of the members of the firm, after the firm and the individuals composing it had gotten into deep trouble and were wading in unfathomed waters. The testimony is conclusive that Mrs. Carrie J. Cartwright did not know of what application A. Y. Cartwright had made of the money he received from W. Brown Wylie for from one to two months after he had paid same into the firm, and had been credited on his individual account, and of the additional and most significant fact, that Mrs. Cartwright was never the legal owner and holder of the Glenn note until the 20th day of January, 1894. If she had been, where was the necessity of taking a formal assignment of the same in writing, under seal, and in the presence of an attorney at law, on that date. The attorney was examined as a witness in the case in behalf of Mrs. Cartwright, and identified the Glenn note, but, as I have previously found, offered no explanation of the assignment. I, therefore, find, as matter of fact, that Mrs. Carrie J. Cartwright was not a creditor of the firm of A. Y. Cartwright & Co. on the 22d day January, 1894, and that the manifest purpose of executing the firm note to her, on that date, was to make her seem to be a creditor of the firm, in order that she might obtain a preference to which she was not, in law, entitled, in the distribution of the firm assets under the deed of assignment that the firm then contemplated making, and which was made six days thereafter.

From this decree, R. M. Allison and Mrs. Carrie J. Cartwright appeal.

*Messrs. Thos. F. McDow* and *C. E. Spencer,* for appel-

lants, cite: *Contract of surety raises implied promise of indemnity:* 16 Gray, 142; Rev. Stat., 2309, 2310. *Ignorance of Mrs. Cartwright of the transaction does not matter:* 38 S. C., 459.

*Messrs. W. B. McCaw* and *Geo. W. S. Hart,* contra. The former cites: *The obligations of R. M. Allison to Jas. L. Moss were original and not collateral:* 41 S. C., 83; 37 S. C., 460; 2 McM., 313; 1 Strob., 444; 12 Rich., 554; 95 U. S., 90; 22 How., 341; 45 S. C., 378. *Evidence showed that husband received money of wife as a gift from her:* 24 S. C., 273; 6 S. C., 240; 2 S. C., 136.

July 4, 1898.  The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are fully stated in the decree of his Honor, Judge Watts, from which the defendants, R. M. Allison and Carrie J. Cartwright, appealed to this Court.

The exceptions of R. M. Allison are as follows: "I. Error of fact, not finding that R. M. Allison was surety for A. Y. Cartwright & Co. on their original indebtedness to J. L. Moss, and that Moss knew it from the beginning; and, in this connection, error of law, not holding it competent, as against said firm and its creditors, to show that he was, even if J. L. Moss did not know. II. Error of fact, not finding that when the note of W. M. Allison and R. M. Allison was substituted for the original indebtedness, it was with the understanding and agreement of all the parties to the note representing said debt that upon a certain contingency, which actually happened, the debt should continue to stand as a firm debt; and finding that it was an unconditional substitution, and that the substitution back was in anticipation of the pending assignment by the firm, and to secure an unlawful preference thereunder; and, in this connection, error of law, holding that even if R. M. Allison was surety, he could only look to W. M. Allison individually for reimbursement in case of

payment. III. Error of fact, not finding that R. M. Alli-son paid the original indebtedness; and finding that the payment was made by W. M. Allison with his own money; and, in this connection, error of fact, finding that the alter-ation made by the clerk in his receipt for the money was not contemporaneous with the receipt itself; and errors of law, holding that the checks on which the money was raised, payable as they were to W. M. Allison, furnished the high-est evidence for whom it had been borrowed; and not hold-ing that the payment by R. M. Allison entitled him to set up his claim, as allowed by the referee, and overruling the referee's report in that regard." This Court concurs with the Circuit Judge in his finding of fact that the judgment was not paid by R. M. Allison, but by W. M. Allison, with money which belonged to the said W. M. Allison. Even if R. M. Allison was a surety, in the first instance, and there was an agreement by which this relation was to continue, as contended by the appellant, still no claim by reason of said suretyship can be sustained, as the judgment was paid by W. M. Allison, who was liable as one of the principals.

Having reached this conclusion, the other questions raised by the exceptions become merely speculative, and the said exceptions are overruled.

Mrs. Cartwright's exceptions are as follows: "I. Error of fact, not finding that Carrie J. Cartwright was a *bona fide* creditor of her husband at the time of the sale of his house and lot, for at least as much as the purchase price. II. Errors of fact, finding that when the note sought to be set up was executed, she was not a creditor of the firm; that the execution was in anticipation of the contem-plated assignment, in order to give her an unlawful preference; and that the Wylie purchase money was not used by her husband to pay his indebtedness to her, and not finding the contrary of each of said findings. III. Er-ror of fact, not finding that the consideration of the note in issue was the two checks given by A. Y. Cartwright to the

firm for $132 and $1,182.99, respectively, and the Wylie-Glenn note, and interest on some one or all these items, her own property, acquired from her husband for a *bona fide* debt, at a time when neither party had any reason to suppose that the firm was insolvent; and that the ledger item, $379.96, represented the said Glenn note and the said interest; and in this connection, finding that said note amounted to only $323.10, and that said item of $379.96 was entered on the ledger to force a balance. IV. Errors of law, not holding, under the facts proved, as alleged above, that she was entitled to set up her claim as allowed by the referee, and overruling the referee's report in that regard." This Court concurs with the Circuit Judge in his finding of fact, that Mrs. Carrie J. Cartwright was not a creditor of A. Y. Cartwright & Co.

Having reached this conclusion, the other exceptions only raise abstract questions, and are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *concurs* as to the claim of Carrie J. Cartwright, but dissents as to the claim of R. M. Allison, as to which he agrees with the referee.